IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 1, 2017

## CAMILO SANCHEZ ET AL. v. ROBERT L. BANTON

**Appeal from the Chancery Court for Loudon County**
**No. 12279     Frank V. Williams III, Chancellor**

_____

**No. E2016-01916-COA-R3-CV**

_____

This case involves a dispute between owners of adjacent property. Plaintiffs sued Defendant for erecting a gate and steel posts, which they alleged impeded access to a deeded joint roadway. The court ordered Defendant to remove the gate and steel posts and awarded plaintiffs punitive damages. We reverse the award of punitive damages because the court did not find by clear and convincing evidence that Defendant acted with the requisite intent to justify such an award. We affirm the judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Robert L. Banton, Philadelphia, Tennessee, appellant, pro se.

## MEMORANDUM OPINION[1]

### I.

_____

[1] The rules of our Court provide as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

Camilo and Kathy Sanchez own land adjacent to Robert Banton in Philadelphia, Loudon County, Tennessee. A dispute arose among them over Mr. Banton's construction of a gate with steel posts on a gravel road. The Sanchezes claimed that the gate and posts "impeded [their] legal use of a deeded joint roadway" and "denied all other's [sic] access to [their] property." According to Mr. Banton, he constructed the gate and posts on his own property for security, namely "to block members of the public that would come on the property to seemingly do drugs and engage in illegal activity."

On November 26, 2014, the Sanchezes filed suit against Mr. Banton in the Chancery Court of Loudon County, Tennessee. According to the complaint, although he initially agreed to removal of the gate, Mr. Banton became "combative, adversarial, and recalcitrant in regard to removing the gate." The complaint further alleged that Mr. Banton "placed debris along the Sanchez boundary line to which these encroachments are intentional acts designed to intimidate [the plaintiffs]." Also according to the complaint, Mr. Banton "engaged in verbal abuse, spewing racial epithets, and demanding the use of his property and threatening others from coming near his property or his perceived boundary line."

As damages, the complaint requested a monetary award of $1,600 so that the Sanchezes could hire "machine labor and workers" to remove debris from their property. Additionally, "to punish [Mr. Banton] for his conduct," the complaint sought $100 per day from November 30, 2012, the date of a demand letter from the Sanchezes' attorney, through November 1, 2014, totaling $71,000.

Mr. Banton, through counsel, filed an answer asserting that the "steel gate and posts ha[d] been removed since the litigation was filed." The answer "denied that th[e] gate impede[d] Plaintiffs Sanchez's [sic] legal use of a deeded joint roadway as it was removed" and alleged that "Plaintiffs always had alternate access to their unimproved property." And Mr. Banton claimed that, "[a]s soon as [he] became aware of the rights conferred in [an easement], he promptly [and] voluntarily removed the gate and counsel for the Plaintiffs Sanchez[es] was advised of this removal." The easement referenced by Mr. Banton, which was also referenced by the Sanchezes in their complaint, is referred to by the parties as the "deeded joint easement."

Later Mr. Banton discharged his counsel[2] and filed pro se two separate complaints, one against the Sanchezes and one against their attorney. Against the Sanchezes, Mr. Banton sought various forms of relief related to the construction of the gate, including a declaratory judgment, compensatory damages, punitive damages, and injunctive relief. Against counsel, among other things, Mr. Banton sought damages for "emotional distress, stress, fear[,] . . . slander, defamation, . . . [and] for filing a frivolous

---

[2] After the filings, the chancery court granted Mr. Banton's former attorney leave to withdraw.

law suit." The Sanchezes and their counsel responded to the filings as a counter-complaint and third-party complaint, respectively. They denied all material allegations of the pleadings and moved for dismissal.

Following a hearing on August 16, 2016, the chancery court entered a judgment in favor of the Sanchezes and dismissed Mr. Banton's counter and third-party complaints. The court found that the gate was constructed on land not owned by Mr. Banton, that the gate had not been completely removed, and that the gate interfered with access to the Sanchezes' property. The court further found that the gate interfered with an easement in favor of the Sanchezes.

The court declined to award the Sanchezes the damages for debris removal. And the court considered the Sanchezes' request for punitive damages of $100 per day excessive. But because Mr. Banton was "the clear and convincing source of all problems," the court awarded "a $5.00 per day damages request, totaling $6,500.00." The court also ordered Mr. Banton to immediately remove "[t]he remaining posts to the gate and all other posts which impede access to Sanchez property."

## II.

In a non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review a trial court's conclusions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

On appeal, Mr. Banton does not dispute that the Sanchezes have a legal right to use the deeded joint easement. Rather, he denies that the gate and posts interfered with the Sanchezes' access to their property.[3] The court found that the gate "interfered with the reasonable access by [the] Sanchez[es] to the Sanchez property" and ordered Mr. Banton to remove the "impediments to the easement."

The record is limited to the technical record, trial exhibits, and a statement of the evidence prepared by Mr. Banton, which we deem approved. *See* Tenn. R. App. P. 24(f). According to the statement of the evidence, "[t]he post is on Banton property and does

---

[3] Mr. Banton also vehemently denies that he admitted building the gate and posts "on land which [he] did not own" as found by the trial court. But this finding of fact is irrelevant to the issues of whether the Sanchezes have a legal right to use the deeded joint easement and whether the gate and posts impeded their rightful access. And despite Mr. Banton's contention to the contrary, the court did not "award [the] Sanchez[es] [Mr.] Banton['s] property."

3

not impede access to Sanchez property." But the exhibits include maps and pictures that support a finding that the gate and steel posts interfered with the Sanchezes' access to their property. So the evidence does not preponderate against the court's finding. We affirm the court's judgment ordering Mr. Banton to remove the gate and steel posts from the easement.

As we perceive it, Mr. Banton also takes issue with the court's award of damages for his failure to remove the gate and posts in response to a letter from the Sanchezes' attorney. Although the court did not designate its award as punitive damages, the court awarded the damages in response to the demand in the Sanchezes' complaint that the court punish Mr. Banton. The award was measured from date the Sanchezes' attorney sent Mr. Banton a letter requesting that the gate and posts be removed.

Our supreme court's decision in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901-02 (Tenn. 1992), governs "both the conditions under which a defendant c[an] be held liable for punitive damages and the factors that . . . determine the amount of punitive damages available." *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 540 n.8 (Tenn. 2008). In Tennessee, the award of punitive damages is "restrict[ed] . . . to cases involving only the most egregious of wrongs." *Hodges*, 833 S.W.2d at 901. A court may award punitive damages only upon finding clear and convincing evidence that "a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id.* Only if the trial court determines that the defendant is liable for punitive damages must it then determine the amount of punitive damages to award in light of the factors outlined by our supreme court. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 355 (Tenn. Ct. App. 2007).

Here, the factual findings do not support an award of punitive damages. The chancery court found, in relevant part, that Mr. Banton's "credibility, at best, [wa]s confused, and at worse, vexatious and intentional," "[t]hat the conduct of [Mr.] Banton was the work of someone who should have known better – and his actions and conduct caused needless expenditures of time and effort," and that Mr. Banton was "the clear and convincing source of all problems." Thus, we reverse the award of punitive damages in favor of the Sanchezes.

## III.

Based on the foregoing, we reverse the award of punitive damages. In all other respects, this judgment is affirmed.

_____
W. NEAL McBRAYER, JUDGE